IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**DIRECT GENERAL INSURANCE COMPANY**,

    Plaintiff,

v.                                            CASE NO.: 4:10cv336-SPM/WCS

**CAROLYN A. GAY, EDWARD GAY and RETONYA WALLACE**, as Personal Representative of the ESTATE OF CURTIS WALLACE,

    Defendants.

_____/

## ORDER GRANTING MOTION TO DISMISS

This cause comes before the Court pursuant to Defendants Carolyn Gay's and Edward Gay's motions to dismiss the action for Declaratory Judgment filed by Plaintiff Direct General Insurance Company ("Direct General"). Defendants Gay seek dismissal of the claims for lack of Subject Matter Jurisdiction (doc. 11). They also seek dismissal of specific claims based on the "Criminal Act Exclusion," or alternatively, partial summary judgment (doc. 12). Direct General has filed memoranda of law in opposition (docs. 16,17). For the reasons set forth below, the Court grants the Gays' motion to dismiss for lack of subject matter jurisdiction and denies the Gays' motion to dismiss Criminal Act Exclusion claims or alternative motion for partial summary judgment.

## Background

On March 8, 2010, Edward Gay ("E. Gay") was driving and Curtis Wallace ("Wallace") was a passenger in the motor vehicle owned by Carolyn Gay ("C. Gay"). The vehicle was insured under a policy with Direct General issued to C. Gay, under which E. Gay was not listed as a driver of the vehicle. C. Gay's auto policy contained a bodily injury limit of $10,000. E. Gay and Wallace were in an accident in which Wallace was killed. Direct General alleges that at the time of the accident and Wallace's death, E. Gay and Wallace were personally involved in the commission of a crime. Following the accident, Retonya Wallace, as personal representative of Wallace's estate, filed a wrongful death complaint against E. Gay as driver of the vehicle, and C. Gay under the dangerous instrumentality doctrine.

Direct General filed an action for declaratory relief in this Court pursuant to 28 U.S.C. § 2201, to determine the rights and obligations of Direct General, the Gays, and Retonya Wallace under the automobile insurance police issued to C. Gay. Direct General seeks a declaration that no coverage is owed to E. Gay and C. Gay for two reasons: 1) C. Gay failed to list E. Gay as a driver on the April 3, 2009, application for insurance and therefore the Policy issued to C. Gay was void for material misrepresentation; and 2) the Criminal Act Exclusion in the Insurance Policy applies to prevent coverage for the underlying accident because it occurred during the commission of a crime.

Alleging a lack of subject matter jurisdiction for failure to meet the $75,000 amount in controversy requirement, E. Gay and C. Gay have filed a motion to dismiss Direct General's action (doc. 11). Further alleging the inapplicability of the Criminal Act Exclusion and its violation of Florida public policy, the Gays also filed a motion to

dismiss all Criminal Act Exclusion claims and alternative motion for partial summary judgment on the applicability of the exclusion to C. Gay (doc.12).

**Standards of Review:**

Subject Matter Jurisdiction

Federal Courts are courts of limited jurisdiction with the power to decide only certain types of cases prescribed by Constitutional and Congressional grants of jurisdiction. See Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1260-61 (11th Cir. 2000). If there is no grant of jurisdiction that covers a particular action before a Federal Court, the Court must dismiss the action for lack of jurisdiction. Id.

In order to establish diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity of citizenship between the plaintiff(s) and defendant(s), and the amount in controversy must exceed $ 75,000. Courts are reluctant to dismiss a case for lack of subject matter jurisdiction, "unless it appears to a 'legal certainty' that [a] plaintiff's claim is actually for less than the jurisdictional amount." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994) (quoting St. Paul Mercury Indem. Co v. Red Cab Co., 303 U.S. 283, 288 (1938)). However, when plaintiff's claim is for a yet undetermined amount of damages, "the *Red Cab Co.* 'legal certainty' test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." Federated Mut. Ins. Co. v. McKinnon Motors, 329 F.3d 805, 807 (11th Cir.2003).

Summary Judgment

Federal Rule of Civil Procedure Rule 56(c) states that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." In making this determination, a court should resolve all issues of material fact in favor of the nonmoving party. Durruthy v. Pastor, 351 F.3d 1080, 1084 (11th Cir. 2003).

The nonmoving party, in turn, bears the burden of producing evidentiary material demonstrating a genuine issue of fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The nonmoving party must show more than the existence of a "metaphysical doubt" regarding material facts, and a "scintilla" of evidence will not suffice. Moss v. Gradia, No. 3:08cv351/MCR/AK, 2010 WL 337603, at *1 (N.D. Fla. Jan. 21, 2010) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that demonstrate a need for trial. Owen v. Wille, 117 F.3d 1235,1236 (11th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

## Discussion

### 1. Subject Matter Jurisdiction

Direct General seeks a judgment on whether or not it is required to provide coverage to E. and C. Gay. Direct General asserts that coverage should be denied on the grounds that the "criminal act exclusion" of the Policy bars coverage for the accident, and that C. Gay's failure to list E. Gay as an operator of the vehicle when applying for insurance is a misrepresentation that nullifies the policy. This court must consider whether subject matter jurisdiction exists in light of these claims and the Defendants' additional contention that the Court does not have supplemental jurisdiction over the Wallace Estate claim.

### a. Criminal Act Exclusion

In their motion to dismiss for lack of subject matter jurisdiction, C. and E. Gay allege that even if the criminal act exclusion is found to apply in this case, it is not subject to any determination of a duty to defend for the purposes of amount in controversy analysis. In order to support this claim, the Gays argue that courts look to the lesser of the face value of the policy or the amount of the actual underlying claim when establishing the amount in controversy for the purposes of subject matter jurisdiction.

However, the cases relied on by the Defendants strongly establish that policy limits alone are insufficient to determine the amount in controversy for insurance coverage purposes. See, e.g. Martins v. Empire Indem. Ins. Co., 2008 WL 78762 (S.D. Fla. 2008) (holding that the policy limits of an insurance policy are not alone sufficient evidence to establish the amount in controversy); Emp'rs Mut. Cas. Co. v. Parker Towing Co., Inc., 2007 WL 4577705, *2 (S.D. Ala. 2007) (holding that the amount in controversy in insurance policy applicability to particular occurrences is measured by the value of the claim and not the value of the policy). The relevant portions used by the Gays are merely creative manipulations of the various Courts' attempts to clarify amount in controversy valuations when insurance claims vastly exceed policy limits and vice-versa.

In actions by insurance companies seeking declarations on whether or not there is a duty to defend or indemnify an insured against lawsuit, precedent clearly supports a court examination of not only the limits of the insurance policy, but also the amount of damages sought in suit and the pecuniary value of the obligation to defend. See, e.g., Macy's Florida Stores, LLC. V. Illinois Nat. Ins. Co., 2008 WL 2741132 (S.D. Fla. 2008);

Clarendon Am. Ins. Co. v. Miami River Club. Inc., 417 F.Supp 2d 1309 (S.D. Fla. 2006). Dairyland v. Chadwick, 2008 WL 912428 (M.D. Fla. 2008). This precedent clearly allows for the consideration of defense obligations in determining the amount in controversy for insurance coverage purposes.

The Gays further assert that even given the consolidation of indemnity and defense costs, Direct General does not have a good faith argument that it can avoid the expenses through litigation in order to claim them as part of the amount in controversy. Essentially that even if Direct General can prove a criminal act and in so doing establish no duty to indemnify, Direct General will still have a duty to defend under Florida Law, and thus the unavoidable defense expenses cannot be counted in consideration of the amount in controversy.

It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage. State Farm Fire & Cas. Co v. CTC Dev. Corp., 720 So.2d 1072, 1077 n.3 (Fla. 1998); see also Nat'l Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 535 (Fla. 1977).

The Direct General Auto Policy specifically states that Direct General has no duty to defend any suit or settle any claim for bodily injury or property damage not covered under the policy. The criminal acts exception in the policy removes Direct General from all liability and resulting need for defense incurred by while in the commission of a criminal act. Direct General accurately points out that although the complaint in the underlying lawsuit does not identify E. Gay's conduct as criminal, the facts implicate criminal behavior and the criminal law exclusion of the policy. Considering this specific policy exclusion, and the possibility that the action of E. Gay falls squarely within that

very exclusion, a declaration by this Court as to the applicability of the exclusion would directly affect the pecuniary value, if any, of Direct General's obligation to defend. As such, this court cannot agree with the Gays' contention that declaratory judgment would not affect Direct General's liability obligations, and thus the potential expenses associated with those obligations are appropriately considered in the amount in controversy at issue.

In spite of the analysis to this point, and support for the inclusion of Direct General's defense obligation expenses in the amount in controversy calculations, established precedent does not allow for conclusory, self-serving assertions of attorney's fees in order to meet the amount in controversy threshold. "Arguably, when the amount in controversy depends on a claim for attorney fees, that claim should receive heightened scrutiny." Cohen v. Office Depot, 204 F.3d 1069,1080 n.10 (11th Cir.2000). "Merely relying on general statements that any litigation of this nature would result in that level of fees is insufficient to meet the burden of proof." Hall v. Am. Sec. Ins. Co., 2009 WL 2215131, *2 (S.D. Fla. 2009).

Direct General has not met its burden to show that a reasonable amount of attorney's fees would reach Direct General's own assessment of over $65,000, thus satisfying the $75,000 amount in controversy requirement. As with the insurance company in Hall, Direct General has not filed any affidavits or provided any other proof, aside from its own assertion, that the fees would exceed $65,000. Thus, as was held by the Court in Hall, without more evidence of how this fee amount was determined or the likelihood of an accumulation of such an amount, this court is unwilling to simply accept this assertion for the purposes of establishing subject matter jurisdiction.

b. Misrepresentation

To support their assertion that insurance misrepresentation claims are properly based on the value of the policy, Defendants Gay cite to a California district court decision which states that, "[w]here the substance of the declaratory judgment seeks to determine the validity of an insurance policy, the policy limit is the amount in controversy." Infinity Ins. Co v. Guerrero, 2007 WL 2288324, *5 (E.D. Cal. 2007). However, the facts of the instant case are easily differentiated from those of Guerrero.

In Guerrero, an insurer sought a declaratory judgment in Federal Court that a policy was void for misrepresentation when the face value of the policy was below the amount in controversy threshold. However, the present action, in addition to the misrepresentation and general policy validity issue, Direct General seeks judgment on the applicability of the policy to a particular accident in the context of the criminal acts exclusion. Guerrero itself states that in declaratory actions involving the applicability of an insurance policy to a particular occurrence, the jurisdictional amount in controversy is measured by the value of the underlying claim, rather than the face amount of the policy. Id. at *3 (citing Hartford Ins. Group v. Lou-Con, Inc., 293 F.3d 908, 911 (5th Cir.2002)). Direct General recognizes that were this case merely a misrepresentation issue akin to that of Guerrero, the $10,000 policy limit would be insufficient to meet federal amount in controversy requirement. However, because it is both a misrepresentation and a specific applicability issue, this court would be wrong to limit the amount in controversy calculation only to the $10,000 face value of the insurance policy.

As mentioned in the Criminal Acts exemption analysis, the fact that this court may consider additional pecuniary obligations over the $10,000 policy value in calculating the amount in controversy does not eliminate the responsibility of Direct

General to reasonably account for over $65,000 in attorney's fees on a $10,000 disputed claim. Without such a clarification and in light of established precedent, this court is unwilling to accept what on the surface appears to be a self-serving fee calculation for the purposes of establishing subject matter jurisdiction.

### c. Inclusion of the Wallace Estate as a Defendant

Because Direct General has failed present any reasonable justification for the fee valuations necessary to meet the minimum amount in controversy, this Court does not have subject matter jurisdiction over the present action regardless of any exercise of supplemental jurisdiction or aggregation of the various amounts in controversy. Therefore, any determination of the appropriate exercise of supplemental jurisdiction or claim aggregation in regards to the Wallace Estate is unnecessary for the purposes of the current analysis.

## 2. *"Criminal Acts Exclusion" / Partial Summary Judgment*

Defendants Gay also seek dismissal of the of Criminal Acts Exclusion claims on the grounds that the plain language of the exclusion does not apply to the loss at issue, and that even if it did it would be unenforceable as contrary to Florida public policy. Alternatively they argue that if the exclusion is found to apply, that it would not apply to C. Gay.

### a. The Language of the Exclusion Applies

The plain language of the exclusion indicates that the policy will not cover losses which arise out of criminal acts where those covered losses exceed a state's financial responsibility laws, but will cover liability arising out of criminal acts for that portion of the damages within a state required financial responsibility law.

CASE NO.: 4:10-CV-00036-SPM-WCS

The Gays claim that Florida law requires a vehicle owner to be able to respond to damages for bodily injury in at least the amount of $10,000. However, the State of Florida only compels this bodily injury liability insurance for drivers who have demonstrated themselves to be high risk operators. The applicable law in the absence of high risk is the Florida No Fault Law, requiring drivers to carry a minimum amount of personal injury protection ("PIP") for the benefit of the owner and other designees. See Allstate Indem. Co. v. Wise, 818 So. 2d 524, 528 (Fla. 2d DCA 2001). Therefore, considering that neither C. Gay nor E. Gay were classified as high risk operators, the $10,000 in bodily injury coverage by C. Gay under the Direct General policy was in excess of minimum financial PIP requirements of Florida Law. Because the policy provided coverage above the minimum amount of financial responsibility required, the Gay's contention that the criminal act exclusion contained within the policy does not apply to this loss is incorrect and insufficient to grant a motion to dismiss.

b. The Exclusion is Not Contrary to Public Policy

The Criminal Acts Exclusion is not contrary to public policy because it does not fall within the sphere of precedent condemning exclusions which destroy the effectiveness of the policy to any substantial segment of the public. See Wise, 818 So. 2d at 526-527. The exclusion at issue, unlike the impermissible exclusion in Wise, does not concern liability for high risk Florida drivers, and does not *completely* eliminate coverage under the exclusion. As previously stated, neither C. Gay nor E. Gay were high risk drivers who required bodily injury coverage. Additionally, the Direct General Policy exclusion only eliminates coverage *in excess* of the minimum required amounts under Florida Law rather than fully denying coverage in any amount, and in so doing destroying the effectiveness of the policy to a substantial portion of the public. As such, the Criminal

Act Exclusion does not contravene Florida's public policy and is not subject to dismissal on such grounds.

### c. The Exclusion Applies to C. Gay

The Gays focus on the term "the insured" in the context of the Criminal Act Exclusion as proof of an ambiguity as to whether the exclusion should apply to the insured who commits the crime or all insureds. However, considering that all of the relevant terms contained within the Criminal Act Exclusion are defined within the Auto Policy to specifically eliminate ambiguity, the Gay's attempt to inject it into the language fails. The definition of "Insured Person" as used in the Exclusion includes a policy holder or relative. Thus, under the very definitions in the policy, the exclusion denies coverage to C. Gay as "the insured person," whether the car was used by C. Gay herself or her son E. Gay in the commission of a crime. Adherence to the terms, definitions and constructions in the policy drafted by Direct General and entered into with C. Gay, clearly bring C. Gay within the application of the Criminal Act Coverage Exclusion in spite of the fact that it was her son E. Gay who incurred liability while using the vehicle in the alleged commission of a crime.

**Conclusion**

The Criminal Act Exclusion applies to the claim at issue, is not contrary to Florida public policy, and covers both C. Gay and E. Gay under the language and construction of the Policy. Therefore, dismissal of the Criminal Act Exclusion claims or partial summary judgment on the issue of the applicability of the exclusion to C. Gay is inappropriate. However, although Direct General is correct that the potential costs of litigation are appropriately considered in determining whether the claim meets the threshold amount in controversy requirement, Direct General has failed to reasonably

explain, justify, or support its largely conclusory and extremely convenient valuation of attorney's fees. Because Direct General has failed to meet the burden of proof in regards to reasonable attorney's fees, in light of the small underlying policy limits and the mere speculation as to the ultimate claim amounts, the claim at issue fails to reach the $75,000 amount in controversy requirement. This Court is therefore without subject matter jurisdiction to adjudicate the issue. Accordingly, it is hereby

ORDERED AND ADJUDGED

1. Defendants C. Gay's and E. Gay's Motion to Dismiss for lack of Subject Matter Jurisdiction (doc. 11) is Granted.

2. Defendants C. Gay's and E. Gay's Motion to Dismiss Claims Based on the "Criminal Act Exclusion" or Alternative Motion for Partial Summary Judgment (doc. 12) is Denied.

DONE AND ORDERED this <u>fifteenth</u> day of November, 2010.

*s/ Stephan P. Mickle*
Stephan P. Mickle
Chief United States District Judge